The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome. We are happy to have you with us today. We will hear argument first in Cross River Bank v. 3 Bea's Assisted Living and Mr. Bartos whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Richard Bartos. I represent Connie Stewart and 3 Bea's Assisted Living in this appeal. We are the appellant. So this case comes down to sort of an interesting question raised by the Court whether the contract was ambiguous as to the status of the borrower. The contract, frankly, is not ambiguous. It is plain as day that she signed only on behalf of her corporation. If you look at Joint Appendix 127, you see that it says borrower's names and signatures with the S's in parentheses. There is but one signature there. And then it says, by signing below, each individual or entity becomes obligated under the note as borrower. Again, only one entity signs this. And it says printed, 3 Bea's Assisted Living by Connie Stewart. Doesn't say and, doesn't say including, doesn't have a second signature line. It has only one. The magistrate judge in this case found that that single signature somehow managed to be two signatures. Managed to bind two entities, even though there was only one signature. And under Maryland law, that one signature applies either by statute, if this Court finds that she signed unambiguously as the principal of this company, or under Maryland corporate law, which holds that when a person signs on behalf of a company, it is a corporate act, not a personal act, unless there's some other issue and there's no other issue alleged in this case. Okay, so now I'm looking at JA 122, and this is the note, and it says borrower, and it says Connie Stewart. What do I do with that? That is true, Your Honor. That is the only place in all of these documents that that is done. That was a document drafted by the bank. And every single bank, every single document drafted by the bank other than that, specifically lists 3 Bea's Assisted Living as the borrower. I'm just saying that seems to be a pretty bad fact for the claim that it's unambiguous that she was signing only in her representative capacity when I'm looking at a document that literally says borrower Connie Stewart. Yes, Your Honor. So one option for the Court, from my perspective, is to say this was unambiguous in my favor. Another option is to say it was not unambiguous. There's some question here, right, because there's a document, as Your Honor said, that says borrower in one box that the bank prepared, but there's eight other places in which the bank acknowledged that the borrower was 3 Bea's Assisted Living. And I guess the other thing that's sort of hard for the argument that it's unambiguous that she's not signing in her representative capacity is that there's Maryland case law that says if you want to make it unambiguous, you can say so-and-so on behalf of or for, and it doesn't say that either. It just, it says her name. I agree with you that the document you referenced doesn't say she's not signing in her representative capacity, but there's also Maryland case law that says if you want to make it really clear, you just say so-and-so on behalf of or as an agent of, and it doesn't say any of those things either. It says by, which I agree is not as clear as what Your Honor is saying, but it does say by, suggesting that, and it says 3 Bea's Assisted Living by Connie Stewart. So there is a, there's the corporate name, and the only way a corporation can sign anything is by a human being signing their name, and that's what happened here. But let's say, Your Honor, that it's not unambiguous in my favor. The problem here is that this is not an appeal from a trial where a jury or a judge heard all the evidence and decided what this meant. This was a summary judgment ruling by a magistrate judge in which that judge said that it was unambiguous in favor of the bank. So if I can apply your, Judge Henton's, your argument, if there's one document that prevents it from being unambiguous in my favor, I've got six documents that prevent it from being unambiguous in my favor. Okay, so let's, let's say, let's say that my gut reaction is that it's not un, let's just for the sake of argument say my gut reaction is this is not unambiguously anything. So tell, walk me through how you think you should do the analysis if my gut reaction is this is not unambiguously anything. Oh, yes, certainly, Your Honor. So. Do you think, for example, does this statute that's talked about in the briefs, does that bear on it? If, if, if you're. Maryland 3402. If your hypothetical is that it's not unambiguously signature by the corporation, then that statute would not apply. What you then have is an ambiguity in the contract, and once you have an ambiguity in the contract, two things happen. The first is, it's inappropriate for summary judgment. This court has held multiple times that it is an exceptionally difficult task to grant summary judgment when there is an ambiguity. And there is no writing that is unambiguous, if it is susceptible to two reasonable interpretations, that's from worldwide rights versus COMBE 955 F second 242. So once you get to the point where it's ambiguous, then you look at the rest of the documents and you try to determine what the intent of the parties was. Help me, help me walk through this statute. So if you, if you're asserting that we would then be under 3402, I presume we're under B. And then B1, there's B1 and B2. B1 tells me what happens if it shows unambiguously that it's on behalf of the representative party. You obviously don't think this is a B1 case, right? Where you think it, well, your first order argument is that it is. Yes, sir. But your fallback argument is that if it's not, we'd go to B2, right? Well, we go to B2 or we go to Maryland common law and corporate, and how corporate. Wait, we'd start, wait. I mean, which do we go to? Why don't we go to B2? Why do we go to something else? Well, because I think both of them apply here. And they're consistent in your view? Yes. Under Maryland corporate law, if a person signs on behalf of a company, they are not personally liable. The question is, if this is ambiguous, is that what happens? So if you look at the documents, the loan application is from 3B's Assisted Living. The terms document is from 3B's Assisted Living. The application form says 3B's Assisted Living. The form filled out by the bank that has borrower in the top left-hand corner, which is JA-115, has borrower 3B's Assisted Living. So once you get to the ambiguity, then you have to look at the rest, this court and the Maryland courts have both said, then you look at the rest of the documents, the rest of the evidence. We never had a chance to do that. This magistrate judge, without a hearing, decided on his own two things. First of all, that it was unambiguous in favor of the bank. But more importantly, that two different entities were liable here when two different entities never signed the document. Counsel, let me ask you a question. I did have a little bit of trouble following the district court's reasoning. But I think it's possible, at least, that what the magistrate judge found turns on the joint and several liability provision, that by signing below each individual or entity becomes obligated under this note as borrower. Why doesn't that – the background Maryland law, I agree with you, the sort of default assumption is that if you're signing as a representative, you're not personally liable. But the parties can contract around that. And why isn't that what they've done here? Why isn't this a bank saying, look, I don't want to be in litigation for the rest of my life with these small businesses, who's liable, the owner or the business? I'm going to write something into the contract that says it doesn't matter. If you sign your name, you're personally liable. Well, because what it says is the entities or individuals who signed below. Right, and she is an individual who signed below. Right, but there's only one signature, and that's the entity that's the company. If Your Honor – I guess I'm saying why can't you read this provision? I actually understood, to the best of my guess, that the magistrate judge was saying, look, she might have signed as a representative of 3Bs, but it doesn't matter because she wrote down her name, and this contract has contracted around the default rule that if you're a representative, you're not personally liable. Well, I think if they're trying to get around both the statute and the common law in Maryland, they need to be a lot more precise than that number one. That's pretty precise. Anyone who signs is obligated. Yes, but if that were true, then every single – they could put that in a contract, and every single corporation that ever signed an agreement, the person would then be personally liable. That is the opposite of what – Of the default rule, but you can contract around it. I don't disagree with you. I think that in this context, there are so many other indications, but that is not what Ms. Stewart was doing, both by her signature at the end and all the other documents that list her company as the borrower. But I'm saying even if her company was the borrower, couldn't the bank insist that if you want to sign on behalf of the company, you too will be personally liable? Yes, and I think they could have done that, but I don't think that is clear enough to hold her personally liable based on that one statement. Plus, at the end it says, by signing below, each individual or entity becomes obligated under the note as borrower, and there's only one entity listed. So if they wanted to do, Your Honor, what you're suggesting, they simply have to have a second signature line. It's not a complicated process. Can I go back to the statute because I'm going to preface this by I'm not sure you've preserved an argument under B-2 because when I read your brief, I really only see reference to B-1, but I just want to walk through how this would work under B-2. So B-2 says if it's not unambiguous that the signature is made in a representative capacity, let's hypothesize that I think that for the sake of argument, the representative, and then the next clause is about a holder in due course. Do you think that the appellee here is a holder in due course? No. Okay, so because they're the issuer, they're not a holder in due course. That's correct. Okay, so then if B-2 applies, we'd go to the last sentence, and then the last sentence says with respect to any other person other than a holder in due course, the representative is, that's your client, is liable under the instrument unless the representative proves that the original parties did not intend. So you agree that if that sentence applies, it shifts the burden of proof to your client to prove that she's not this, right? Yes, sir, and we never had a chance to do that. Well, but did you ever assert that B-2 is the governing rule here? When I read your brief, the only references I see are to B-1. So two things. I did not reference B-2 because I thought a stronger argument was under the unambiguous. Secondly, I wasn't counsel when this matter was brought before the magistrate judge. I know that it was raised, sort of, but I don't believe it was raised in full. It wasn't raised in that statute, and I asked the judge before he ruled if I could supplement. He said no. I did file a motion for reconsideration, but as the court knows, those are rarely granted. So we never really got to that, and that's exactly why we're here, right? But earlier you said that the common law and B-2 are one and the same, so it really doesn't matter which we're under, but I don't think that's right because under B-2, your client has the burden of proof. If it's ambiguous, you lose because you haven't. I'm sorry, Judge Harris. I misunderstood your question. I thought you asked if they were consistent. I think they are consistent. I don't think they're the same. But do you agree that if we're under B-2, the burden is on your client to show what was going on, whereas if we're under the common law, if you can't tell what's going on, it goes to a jury? Yes, and we were never given the opportunity to do that. I agree with you, and I think we can meet that burden very easily by these documents, if my client ever had an opportunity to explain what was going on. If we're in B-2 land and the burden is on you, who is the decider then? Is that a question for the court or is that a question for a jury? As I read the cases, I would hope to be in front of a jury, but as I read the cases, the question on contract interpretation generally is done by a judge, but it's done by the court after a hearing, right? After we have an opportunity to present our witnesses and explain things and show the judge our position on this and meet the burden that Judge Harris is talking about. So if you decide, if we were to decide there's ambiguity one way or the other, the answer then is it has to go back and the trial court, whether magistrate or district judge, would have to take evidence and determine what the best resolution of that ambiguity is. Yes. In addition, two things. First, they would have to have a hearing, take evidence, listen to argument, but more importantly, what the magistrate judge didn't do here is what is required when assessing an ambiguity, and that is looking at the rest of the documents. There's nothing in the judge's opinion that says, well, I looked at the point where the bank said the borrower was 3B's assisted living, and I don't think that counts because of this. There's nothing in the judge's opinion that says that. So yes, we would be in front of either a judge or a magistrate judge, but we would be able to present our position. We would be able to present evidence. Ms. Stewart could take the stand and say, here's what happened. Here's who I talked to the bank about. Here's how we got in this situation. Do you agree, though, that with B2, again, assuming for the sake of argument we're in B2 land, it says unless the representative proves that the original parties did not intend. So you agree that's not just a question of what your client subjectively believed. It's what the parties mutually agreed, if anything, right? Yes. So hypothetically, if one could show that your client believed she was signing in an individual capacity but the bank thought she was signing in a representative capacity and there was really no meeting of the minds, if your client has the burden of proof, she would then lose, right? Because she could not prove that the parties did not intend something. If the court found that both parties were equally credible and that the other... No, they're both being totally sincere. They're both saying she says I did not believe that I was personally liable and the bank officer says I absolutely believed that she was personally liable and then the court said, well, did you ever, like, hash this out to figure out what it was? And then they say no. That's all the evidence the court believes, all that evidence. Your client would then lose, right? I think that's fair. I hope that's not the outcome, but I understand the... I'm basically a criminal defense attorney, so I'm pretty familiar with the burden of proof. I usually don't have it. I have it in this case, and I see my time is up. I do have just one very quick question about the statute. So the statute only applies to negotiable instruments. I do not remember this part of law school. Is it 100% obvious that this is a negotiable instrument and not just a regular contract? I believe everybody has agreed that it's a negotiable instrument.  Thank you. Just specifically that the note is a negotiable instrument, that what the negotiable instrument is is the note? Yes, sir. Yes, sir. Thank you. Thank you, Your Honors. Mr. Lerner, whenever you're ready. Thank you, Your Honors. Are you ready? Okay. Jonathan Lerner on behalf of Cross River Bank, the plaintiff appellee. I'm glad we were discussing the promissory note because that's what I wanted to bring up. That's the main document in this transaction. And a couple of things I wanted to point out. First of all, this document, this was originated by the SBA, not the bank. So if you look at the appendix, page 122, it has the SBA logo on it. There are many of these, many PPP loans that happened in that time period. These terms are created by the SBA. Is there in the SBA program or in the bank's experience, is there any example of a business and its owner being held jointly liable? I understand what I think is ambiguity in this one, but given how many of these SBA, PPA, PPP loans exist, does the bank have other examples where they have held the owner and the entity liable? I mean, that seems like a highly unusual thing to do just as like a generic matter, absent sort of specification, right? I mean, sometimes you do require such a promise, but in loans as a general matter, that doesn't seem to work that way. But is this like a common practice? So if discovery came out, would the bank be able to say, yes, we've held the owner to be responsible in every single one of these PPP loans? Because the regs don't seem to suggest that, and maybe you could read the contract that way, but it doesn't seem like that's the consistent pattern. I don't know of any examples of that happening, but I did want to. But doesn't that tell us something about the state of mind? I mean, if we got to this question of ambiguity, wouldn't it tell us something about the state of mind if, for example, your bank, every other one correctly listed the borrower as the entity and not the agent of the entity, and every other one of these correctly shows that it's the entity and not its representative? Wouldn't that sort of suggest something to us about the state of mind of what was going on? So I guess what I'm sort of asking there is, how can we decide this without fairly extensive discovery into your bank's practices with other loans, right, how you treat other loans? I've been involved in other cases where the bank was recovering loan money, but I don't recall any that had this issue that we're dealing with today. I did want to point you to paragraph 9 in the promissory note you've seen, I'm sure. This is page 126, just a few pages after the beginning. It states explicitly, all individuals and entities signing this note are jointly and severally liable. And the trial judge even cited that in his opinion. And so it's explicitly clear that Connie Stewart and 3B's are both liable, not just one. Can I ask you some framing questions about, like, some of them I asked your friend on the other side, see if we can get agreement. Do you think that this is a negotiable instrument? It's unclear how this got processed, because as you know... This feels like a fairly straightforward question. Do you believe that this note is a negotiable instrument within the meaning of Maryland Code 3402? I don't know the answer. How can I decide this case if I don't know if this is a negotiable instrument or not? Because if it's not a negotiable instrument, 3402 is irrelevant, and if it is a negotiable instrument, 3402 is super important. It's certainly a contract, and is it negotiable in what sense? As defined in the same provision of the Uniform... I mean, I think this provision of the Uniform Commercial Code defines what negotiable instrument means, right? That the terms change in the transaction? Because I think these are the standard terms. I don't see anything in here that would... that change. Okay, let's assume for the purpose of argument that it is a negotiable instrument. So now I don't understand how what the district court did is remotely consistent with the statute. Because I look at B1, and the statute tells me what to do if the note shows unambiguously that the signature is made on behalf of the representative party. And just so I can keep this straight... So this addresses a situation where it makes totally, totally clear that she's signing on behalf of the business and not herself. It says in that situation, she's not liable. But what the district court, to me, seems to have read it as saying the opposite. The district court seems to say it is unambiguous that she is signing in her personal capacity, and that means she is liable. But that is not what B1 says. B1 addresses the opposite situation, right? So if it's not a B1... So I don't see how for you it can... I mean, your friend on the other side could win if this is a B1 case, but you can't win this case under B1, because B1 doesn't address the scenario where you win. So then we'd have to go to B2.  So, next question. Do you think that your client is a holder in due course? If... It's unclear. I can't... Well, again, I literally can't apply B2 unless I know whether your client is a holder in due course, because B2 has different rules for holders in due course and for people who are not holders in due course. I mean, again, I think that the trial judge... And he cited that clause that I quoted. Which clause? That paragraph 9. I'm not talking about paragraph 9. I'm talking about the statute. No, because it's very clear that... The term is very clear. They're jointly and severally liable. So you don't have to... No, but I'm telling you that I think that under this statute, that would just be... If this statute applies, it would be totally wrong, because this statute doesn't say if it's totally clear. I read the trial judge as saying, it's totally clear she's signing in an individual capacity. Whether that's right or wrong, that's what I read the trial judge as saying. But even if that's true, if this statute applies, that doesn't mean summary judgment for your client. It means we have to decide which sentence of B2 applies. And under the... Let's just posit that I don't think your client is a holder in due course. It then would say she's liable unless she proves the parties did not intend, and the magistrate judge did not give her an opportunity to try to prove the parties did not intend. So what do I do with that? Well, there's another aspect which shows that she knew she was responsible and in control of the money. What's that evidence? So what is the evidence that she knew she was personally responsible? Because literally the day the money came in, $1.7 million, she moved over $1 million out of the account. So that might establish that she's a thief. To herself and to her family. That might well establish she's a thief. And that might well subject her to criminal liability. I understand that. But why does that tell us that she knew she was personally liable for it? I totally get why the U.S. Attorney's Office might be interested in that move. But that doesn't tell me anything, it doesn't seem like, about her understanding of her personal liability under the note. Is there any other evidence that she knew it? You just said the evidence shows it. Judge Huytens has pointed to the need for evidence. You said the evidence shows that she had the understanding. I don't know whether that would suffice. But what is the evidence other than, okay, she stole the money, fine. What else do you have that suggests that she had that understanding? I think it's clear that if she moved all the money around and used it for, and she opened up new accounts, and immediately, and moved the money to other businesses, entities that she owned, and then a few days later she changed, she created a new 3Bs entity. Instead of an LLC, she called it a corporation, and created that and moved some of the money there. I'll give you, explain to me, totally understand why that's fraud, and totally understand how, if all of that is true, she may well end up in prison as a result of it. Totally get that, right? That doesn't seem hard here. As a result, she might not be interested in testifying. I understand that too, but that would be her burden. But why does that suggest anything at all about her understanding of her personal liability under the note? I don't get the connection between these two. One, she may well be a criminal, but that doesn't suggest her mental state with respect to the note, does it? No, it doesn't directly say that. The point of this is, when you said the evidence shows this, what we really have is no evidence on that question. If that is the question, we would have to develop evidence of it. It might require some evidence and discussion from her. It might require from your bank, the practices that you all engaged in with all of these loans. Those all seem like areas that are ripe for discovery and discussion to determine what the evidence shows. But what we don't have here is any of that evidence. Honestly, I don't think we need to prove that because, again, the terms of the note make it clear that she and the entity are jointly and severally liable. I just think it shows you that in the big picture, she was aware that she had control of the money and she could do whatever she wanted with it. Nobody denies she had control. She controls the entity. Like, she would have control of the money, whether she's personally liable or not. Those are just like non-responsive answers. So I just think that the terms of the note are very clear. And it even spells out, not related to this issue, but in Paragraph 1, it actually spells out the amount in words. And in many places, she's alleged that she didn't know the amount of the loan because there were no decimal points or commas on the numbers. Can you tell me how or can you describe to me how that amount was arrived upon by your bank? That didn't seem to be the amount that was requested. And then your bank sort of writes somebody, whether the entity or her. It seemed like the check was made to the entity. But how did the bank arrive at $1.7 million, given the documentation that she provided? I don't have definitive proof of it, but I think it's pretty clear that during the process that Connie Stewart or someone helping her adjusted the number from because it should have been $20,000, and it ended up being $1.7 million. So you think, did she break into the bank to do that? Like, I don't understand that, right? So she submits it saying $20,000, and the number moves to $1.7. Did she do that in your computer system? Did she, like, hack in? I think she did it while she was online applying for the loan. So the borrower typically, your bank operates, I mean you might want to think about saying this, but your bank operates where the loan amount is only inputted by the borrower? The bank doesn't control the loan amount? I can just pick, if I apply for a loan, I just pick whatever number I want? Well, they should have realized that it was a mistake. I mean, they weren't intentionally calling it a $1.7 million loan because on page one of the application it shows that she only had eight employees and the monthly payroll was only $8,000. Does the bank get compensated based on the total amount of loans that it issued under this plan? The bank would normally get, the SBA would be a guarantor and will probably reimburse the bank $20,000, which was the real amount that the loan should have been. But they're not going to reimburse the bank $1.7 million. Can I take us back to the negotiable instrument question? So I'm looking at 3104A, which defines what a negotiable instrument means in Maryland, and it basically says, negotiable instrument means an unconditional promise or order to pay a fixed amount of money with or without interest. So do you agree this note is an unconditional promise or order to pay a fixed amount of money with interest? I think it is. And then it says, is payable to bearer or to order at the time it is issued or first comes into possession of the holder? And I'm looking at JA-122, and I see paragraph 1 labeled promise to pay in return for this loan, promises to pay to the order of lender the amount, and then it lists the amount. So do you agree that the is payable to bearer or order condition is satisfied? Yeah. Okay. It then says, too, is payable on demand or at a definite time? And now I'm looking at 123, where it says, you have to pay using the following payment schedule described in this document. So do you agree that clause is satisfied? Yeah. And then the last one says, does not state any other undertaking or instruction to the person promising or ordering payment to do any act in addition to the payment of money, and then it says a few other things that are exceptions, but does this document do anything other than promise to pay money? It may mention the forgiveness aspect of the PPP loan. But it doesn't make, like, other contractual promises. This isn't, like, promise to pay money and also promise to, like, paint your house and also promise to, like, employ you. This is just, like, you're lending her money, you're lending her or the business. I know that's what we're here to decide. You're lending someone money, and they're promising to pay it back on certain terms. There's not another series of promises, right? Right. Do you think the forgiveness piece of this affects it? I mean, I can't tell if that's what you're saying, whether you're suggesting to Judge Eidens that the forgiveness piece of this program makes this not negotiable for some reason because it's not a certain promise to pay. No, I wouldn't say that because the forgiveness program is you have to use the money for payroll and other business expenses, and obviously payroll being the main use of the loan funds, and her payroll was minimal, so how could she use $1.7 million for payroll? You know, she ended up transferring the money around and buying a house and all this kind of stuff. Is the forgiveness piece included in the note itself, or is the note a negotiable instrument that doesn't refer to the forgiveness so that the forgiveness program is really a distinct item? It may be just a regulation that is separate from this note. Well, it may be, or is it? It is. And there's also a in the application. No, that's a question. You said it may be, but let's assume for the sake of argument that I think it might be relevant, whether it's part of the note or external to the note. Which do you think that is? Well, it's definitely relevant. I'm just looking in the note to see if it's in here. There are other documents relating to the transaction. In the loan application document, it does list other rules and clauses. But again, there's no way that she would be approved for forgiveness because the amount issued by the bank was extraordinarily higher than the payroll situation. So if you have any other questions, I'll try to answer them. I think we're all set. Thank you very much. Okay. All right. Thank you all. Mr. Bardos, you have some time on rebuttal. Looks like I just ran out. I'm sorry. Mr. Lerner, thank you very much. And Mr. Bardos, you have some time for rebuttal. Thank you, Your Honor. So can I ask a procedural question before you get started? Go ahead. Do I understand that you have appealed only the contract claim? There are lots of other things that are potentially at issue, but that count one, which is a contract claim, that that's the issue that you've appealed? Yes, sir.  So to answer Judge Richardson's question about other loans, as I said, I do a lot of criminal defense in federal court. I've handled a lot of PPP loan cases. I've never seen anybody going after personally because it is the Paycheck Protection Program. It was designed for companies to obtain loans for those companies to pay their employees. It's not a personal loan. It was never a personal loan. That's the first thing. The second, with regard to forgiveness, that's not in the note anywhere. The forgiveness program is a completely separate thing that the SBA said, Look, if you get this Paycheck Protection Program loan and you can show us that you spent 80% on payroll, we will forgive the loan. It has nothing to do with the bank. And you are absolutely right that my client, on behalf of her company, filed an application for a loan for $20,000. That's what she did. The suggestion that she somehow or anybody somehow fraudulently sought $1.7 million is simply incorrect. That was a bank error. It's been a bank error from the beginning. And what the bank is doing is they're saying, We made a mistake. We're not going to get reimbursed by the SBA, so we've got to go after this woman. That's really, I think, why we're here. But the forgiveness program is not part of what the bank does because in a normal, proper PPP loan situation, the bank makes the loan, and this is why the banks made all these loans, right? They get a commission, and the SBA pays them back. There's very little risk to the bank if they do the right thing. If they do the wrong thing, the SBA says, as they did in this case, We can't give you $1.7 million. It was never appropriate to give that money out. So the forgiveness program is separate, but the paycheck protection program is clearly designed for companies to be able to pay their people, and the companies are the ones who are the borrowers. And I did have an opportunity, Judge Hayden, and I apologize for not doing it this morning, to reread the B-2. Frankly, I should have mentioned it a lot stronger in my brief, or mentioned it at all, really. But I think you've hit on exactly what the problem is here. There may be a question, as Judge Harris pointed out, on this one line in the note with regard to who signs and who's liable. But summary judgment on this issue, I think, is grossly inappropriate, particularly given that, and I haven't even asked for this before, but I'll ask for it now, that the magistrate judge was supposed to look at this in a light most favorable to my client, not most favorable to the bank. Do you agree that if you go back, in order to meet your burden, that your client would have to testify, and that that creates some potential problems? You're a criminal defense lawyer. But that's what you want to do. You want to go back and your client be given the opportunity to be put under oath and ask questions about what happened here. Yes, sir, and I also know that the U.S. Attorney's Office is aware of the situation, has not filed any charges, did not intend to file any charges as far as what they've informed me. They did file for forfeiture of the house at one point, but they've withdrawn that now because I told them, look, we're in front of the Fourth Circuit, and they're going to decide this case. They're well aware of it. I understand the concern. I have advised many a client on the Fifth Amendment. I'm pretty familiar with it, but I don't think it applies in this case. I could get into the details, but I'm comfortable with that, and I believe that my client filed an affidavit under oath that said I applied for a loan in this amount, I got this amount. She obviously went to a lawyer and said, what am I supposed to do with this money? The lawyer said, you can spend it on your business. That's a whole separate lawsuit. But to answer your question shorter, no, I'm not as concerned. Counsel, just to go back to Judge Richardson's question, you're only appealing on the breach count. The district court also granted summary judgment on fraudulent conveyance, different count, but is your view that that just sort of follows the breach? Yes, yes, I think all of it does. Yes. Unless there are other questions. Thank you all very much. Thank you. We will come down and greet counsel and then go on to our next case. Thank you. Thank you. Thank you. Everyone can be seated. All right, we'll hear argument next in number 241734. And hear first from the appellant, Mr. Poon, when you're ready. Thank you, Your Honors, and may it please the court. The government's position in this case that can violate the Constitution
judges: Pamela A. Harris, Julius N. Richardson, Toby J. Heytens